UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FRANCHIE FARMER,

    Petitioner,

        v.

UNITED STATES OF AMERICA,

    Respondent.

Civil No. 14-cv-694-JPG

Criminal No 11-cr-40073-JPG-001

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on petitioner Franchie Farmer's motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255 (Docs. 1, 2 & 4).   The Government has responded to the motion (Doc. 14), and Farmer has replied to that response (Doc. 15).[1]

On June 14, 2012, a jury found Farmer guilty of one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and one count of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii).   The robbery had occurred on November 6, 2008, at the Capaha Bank in Tamms, Illinois.   The Government presented evidence that Farmer had participated in the planning of the robbery with accomplices Holli Wrice and Richard Anderson and that Farmer had driven Wrice and Anderson to the bank in her SUV and had waited outside while Wrice and Anderson entered the bank, brandished firearms and removed money. The Government also presented evidence that Farmer had written a note used in the bank robbery before arriving at the bank, although fingerprints on the note were never identified as Farmer's.   A

---

[1] Farmer advances in her reply brief several arguments she had not raised in her earlier briefing. The Court disregards these arguments, which she could have and should have made in her original briefing.   It has long been established that arguments in support of a § 2255 motion that are raised for the first time in a reply brief are waived.   *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998).   This rule holds true even if the movant is proceeding *pro se*.   *Id.*   This is because the opposing party does not have an opportunity to respond to the new arguments in the reply brief. *Id.*

substantial part of the Government's evidence was data from cell phone towers that identified the general locations of Farmer's and Wrice's cell phones around the time of the robbery.   Farmer testified in her own defense and denied that she had any connection to the bank robbery.   She claimed she had loaned Wrice her SUV and her cell phone on the day in question without knowing they were going to rob a bank.   The jury rejected Farmer's defense and convicted her on both counts under an aiding and abetting or coconspirator theory.

On September 13, 2012, the Court sentenced the petitioner to serve 141 months in prison. The petitioner appealed her conviction to the United States Court of Appeals for the Seventh Circuit, which on May 30, 2013, affirmed the Court's judgment.   *See United States v. Farmer*, 717 F.3d 559 (7th Cir. 2013).   The petitioner did not seek a writ of *certiorari* from the Supreme Court.

**I.      § 2255 Motion**

In her § 2255 motion and its first supplement, the petitioner argues her counsel, Rodney Holmes, was constitutionally ineffective in violation of her Sixth Amendment rights because he failed to:

1.      investigate and call to testify Sharon Bauers, Lana Neal and Entwain Johnson;

2.      adequately review the Government's evidence with the petitioner in preparation for trial;

3.      investigate juror misconduct through premature deliberations, request alternate jurors be used and request a hearing on the matter;

4.      request a change of venue in light of the gallows near the courthouse and the reputation of racism in the community in which the Court sits;

5.      object to FBI Special Agent Ron Bratcher's testifying based on his unprofessional conduct;

6.      maintain attorney-client confidentiality when he discussed the case with others;

7.      object to prosecutorial misconduct;

8.      object to sentencing guideline offense level enhancements not supported by a jury finding, *see Alleyne v. United States*, 133 S. Ct. 2151 (2013);

9.      object to a jury instruction that did not require the jury to find the petitioner knew in time to withdraw from the conspiracy that her coconspirator would be using a gun, *see Rosemond v. United States*, 134 S. Ct. 1240 (2014); and

10.      object to a jury instruction allowing a conviction for aiding and abetting when the indictment did not include that theory of liability.

The petitioner also makes reference to numerous other alleged errors in a way that is too vague or confusing to understand or respond to.

In a second supplement, Farmer clarified that Ground 8 was intended to be a direct challenge to her sentence based on *Alleyne*, not an alleged instance of ineffective assistance of counsel. She also added two new claims of ineffective assistance of counsel based on counsel's failure to:

11.      convey a plea offer in violation of *Missouri v. Frye*, 132 S. Ct. 1399 (2012); and

12.      include a claim on appeal based on the lack of Farmer's fingerprints on the demand note used in the bank robbery.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court rejected Grounds 3, 4, 8 and 10 as a basis for relief under § 2255 and directed the Government to respond to the remaining counts. In its response, the Government asks the Court to deny Farmer's § 2255 petition because it is not adequately supported by affidavits and to deny it on the merits of her arguments. The Court now considers the remaining counts.

3

## II.    Analysis

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States."   28 U.S.C. § 2255.   However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2830 (2014)). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).

Farmer's remaining challenges to her sentence rest on alleged instances of ineffective assistance of counsel.   The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."   U.S. Const. amend. VI.   This right to assistance of counsel encompasses the right to *effective* assistance of counsel.   *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).   A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir.), *cert. denied*, 135 S. Ct. 501 (2014); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel.   *Wyatt*, 574 F.3d at 458.   The Court must then consider

whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *accord Groves*, 755 F.3d at 591; *Wyatt*, 574 F.3d at 458. Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Strickland*, 466 U.S. at 689. The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *Groves***,** 755 F.3d at 591**;** *Jones*, 635 F.3d at 915; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

A.  Ground 1:  Failure to Investigate and Call Witnesses

Farmer claims her counsel was deficient because he failed to investigate three witnesses – Sharon Bauers, Lana Neal and Entwain Johnson – and call them to testify in her trial. The Government argues that Holmes' decision not to call these witnesses was a trial strategy Farmer must accept and that Farmer suffered no prejudice from that strategy.

A defense attorney has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 691 (1984); *accord Wiggins v. Smith*, 539 U.S. 510, 521 (2003)*; Koons v. United States*, 639 F.3d 348, 353-54 (7th Cir. 2011); *Adams v. Bertrand*, 453 F.3d 428, 436 (7th Cir. 2006). An

5

attorney does not have to investigate every conceivable line of mitigating evidence as long as his decision not to investigate a particular line was reasonable from his perspective at the time he made the decision to forego the investigation.   *Wiggins*, 539 U.S. at 521-22; *Adams*, 453 F.3d at 436.   Strategic choices to limit an investigation are reasonable if "reasonable professional judgments support the limitations on investigation."   *Strickland*, 466 U.S. at 690-91; *accord Wiggins*, 539 U.S. at 521.

When a petitioner accuses her counsel of failing to investigate her case, in order to establish prejudice she must point to "sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced."   *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (internal quotations and citation omitted); *accord Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004).   She cannot rely on vague allegations that the investigation was insufficient or would have yielded favorable evidence.   *See Hardamon*, 319 F.3d at 951.   Similarly, when a § 2255 petitioner faults her attorney for failing to present evidence at trial, she bears the burden of demonstrating what evidence the attorney should have presented and that the presentation of such evidence would have had a reasonable probability of changing the result.   *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005);   *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003).   The Court will now examine each of the three witnesses Farmer says Holmes should have investigated and called as a witness in her trial.

      1.   <u>Sharon Bauers</u>

Farmer claims she told Holmes that Sharon Bauers was willing to testify that Farmer's accomplice Wrice had told Bauer that she and Anderson, Wrice's nephew, had "agreed to do what

6

they had to, to get [Anderson] home." Pl. § 2255 Mot. at 4 (Doc. 1).[2]   Bauers was Wrice's cellmate at the White County Jail prior to Farmer's trial.   Anderson was also housed at that facility.   Farmer claims that at some point when Anderson was suffering some kind of "mental breakdown," jail officials called on Wrice, his aunt, to help calm him down.   Afterward, Wrice allegedly told Bauers that she and Anderson had agreed to do whatever they had to do to get Anderson home.   Farmer infers that this included lying about Farmer's involvement in the armed bank robbery.

This piece of information from Bauers would not have had any reasonable probability of changing the outcome of the trial.   As it was, Holmes aggressively cross-examined Wrice and Anderson with their prior convictions, inconsistencies in their statements before and during trial, and their self-interest in testifying against Farmer.   Those substantial efforts did not succeed in convincing the jury to disbelieve Wrice or Anderson, and it is unreasonable to believe that a vague agreement to "do what they had to" in order to get Anderson home would have made a difference in the jury's credibility assessment.   Nor is it reasonable to believe that this one piece of indirect evidence would have outweighed the substantial evidence of Farmer's guilt presented at trial and accepted by the jury.   Farmer simply suffered no prejudice from Holmes' failure to investigate and call Bauers as a witness.

2.    Lana Neal

Farmer claims Holmes should have called Lana Neal to testify that "Farmer has never rode around with [her], anywhere," Pl. § 2255 Mot. at 5 (Doc. 1).   At trial, Wrice testified that Neal was involved in the early planning of the bank robbery with Wrice and Farmer but that Farmer

---

[2] Wrice and Anderson were charged with the same bank robbery as Farmer, although in a different case, No. 10-cr-40065-JPG.

decided not to involve her further because she had "rode over" on her own son.   Tr. at 51-52.

The Court presumes this means Neal had at some point given information about her son's illegal

activities to law enforcement.   Wrice testified that Farmer said that since Neal had informed on

her own son, she would also be likely to inform on them if they got caught.   Farmer also later

testified that she and Neal never cased out a bank together.   Tr. at 355.

It is clear why Holmes would not want to put Neal on the stand:   she had no helpful

information, and in cross-examination – if Neal did not invoke her Fifth Amendment right not to

testify – the Government would have been able to ask her about Farmer's involvement in the early

stages of planning the bank robbery.   It appears Holmes believed Neal could have refused to

testify by exercising her Fifth Amendment right against self-incrimination.   Had this happened,

even without Neal's testimony, the jury could have drawn the inference that Neal was involved in

criminal activity involving Farmer about which she did not want to testify.   Furthermore, had

Neal testified and denied any knowledge of such involvement, the questioning would have served

to highlight Wrice's testimony that Farmer was involved.   In contrast, any value she could offer to

Farmer's defense by testifying that she was unaware Farmer was involved in planning the bank

robbery or that Neal never "rode around" with Farmer was minimal compared with the risk she

posed by taking the stand.   Holmes' decision not to call her was a reasonable one, well within the

bounds of competent performance.   Additionally, Neal's testimony on such a minor issue would

have had little chance of changing the result of the trial in light of the other evidence in the trial.

### 3.   Entwain Johnson

Farmer claims Holmes should have called Entwain Johnson to testify "that Farmer had

never called him," Pl. § 2255 Mot. at 5 (Doc. 1), and that Farmer "had never talked to him by

telephone," Pl. Reply at 16 (Doc. 15).   At trial, Special Agent Bratcher testified that very shortly

after the bank robbery, Farmer's cell phone received an incoming call from a phone number registered to Johnson.   There was no suggestion Johnson was involved in any way with the bank robbery.   Holmes was not deficient for failing to call Johnson since the testimony Farmer claims he would have given was not inconsistent with Bratcher's testimony.   Bratcher testified Farmer's cell phone *received* a call from Johnson's phone, but Johnson would have testified that Farmer never *placed* a call to Johnson's phone.   Furthermore, testimony that Farmer's cell phone received a call from Johnson does not necessarily mean the call was answered and that Farmer talked to Johnson.   It was not deficient performance not to call a witness with irrelevant testimony, and Farmer suffered no prejudice from Holmes' decision in this regard.   Furthermore, even if Johnson's testimony had been inconsistent with Bratcher's, it is on such a minor issue that there was no reasonable probability in light of the other evidence at trial that it would have convinced the jury not to convict Farmer.

Even taken all together, in light of the other evidence in the case, the presentation of these three witnesses' testimony on relatively minor issues would not have had a reasonable probability of changing the outcome of the trial.   Farmer has not identified any other evidence from these witnesses that would have been uncovered in an investigation such that it could have been presented at trial.   For these reasons, Farmer is not entitled to § 2255 relief because Holmes did not investigate or call as witnesses Bauers, Neal or Johnson.

B.   Ground 2:   Inadequate Time with Farmer in Trial Preparation

Farmer claims her counsel was deficient because he did not spend enough time preparing and reviewing trial strategy with her before trial, meeting with her only one day.   She states that she told Holmes a detailed account of her movements on the day of the robbery but believes that if she had spent more time with Holmes, she could have reviewed all of the discovery and pointed

him to inconsistencies in the statements of Wrice and Anderson.   For example, she could have pointed out that Wrice's statement that they discussed getting a gun was patently fabricated because Wrice had already stolen guns and had them available for use in the robbery.   The Government argues that Farmer has not shown how she was prejudiced by not spending more time before trial with her counsel.

The Court agrees that Farmer has not shown how spending more time with her counsel in preparation for trial would have had a reasonable probability of changing the result of the trial. She was able to give Holmes an account of her activities on the day of the robbery, and he vigorously argued an alibi defense based on Farmer's account.   Farmer has not identified anything else she could have added to her alibi defense that could have had a reasonable chance of causing the jury to believe her version of events.

By the same token, Farmer claims she could have pointed to inconsistencies in Government witnesses' statements.   The Court is hard-pressed to believe counsel needed such assistance in identifying inconsistencies in witness statements before trial.   Counsel are trained in such areas, and Holmes ably demonstrated in cross-examining witnesses at trial that he had done his homework in this regard.

As for the one specific piece of information about which Farmer believes she could have enlightened Holmes – the absurdity of discussing obtaining guns with Wrice when Wrice already had guns – that information would not have been helpful to Farmer's defense.   Wrice testified at trial that she, Farmer and Farmer's husband had discussed using guns in the robbery, that they knew they could come up with some guns, and that Wrice already had the guns they used – one Wrice had purchased and the other she had stolen in a prior robbery.   Tr. at 56-57.   There was no evidence that the three accomplices discussed where they might obtain guns, so evidence showing

10

that such a discussion was unlikely to have happened was not useful to impeach Wrice or to Farmer's defense.

Because Farmer has not shown how Holmes' spending more time in trial preparation with her would have had a reasonable chance of changing the outcome of the trial, she is not entitled to § 2255 relief on this basis.

C.     Ground 5:   Bratcher's Conduct

Farmer faults her counsel for failing to object to Special Agent Bratcher's tampering with two Government witnessed by telling them not to talk to Holmes.   She suggests her Sixth Amendment right to confront witnesses against her was violated by such instructions.   She further argues Holmes should have objected when Bratcher was not forthcoming with his answers while testifying, perjured himself, lied in the affidavit to support her arrest, was evasive, hostile and defensive and became antagonistic to Holmes.   She believes Holmes should have requested Bratcher be declared a "hostile witness" and be excluded as a witness in the case.   The Government argues Bratcher did not behave in an unprofessional way, that, even if he did, the remedy for "unprofessional conduct" is cross-examination, and that all the evidence he provided at trial was admissible.

As a preliminary matter, there is nothing magic about declaring a witness "hostile" that would prevent him from testifying.   It simply expands the type of questions counsel may ask an uncooperative witness on the stand.   *See* Fed. R. Evid. P. 611(c).   Bratcher was clearly already an adverse witness, which allows the expanded mode of questioning, so declaring him "hostile" in addition would have not changed anything.   Furthermore, the right to confront witnesses contained in the Sixth Amendment is achieved by allowing cross-examination, not guaranteeing a witness will talk to both sides before trial.   Witnesses are not compelled to talk to either side

unless subpoenaed, although they often do out of their own self-interest or sense of responsibility.

As for Farmer's general complaints about Bratcher's testimony, the Court has carefully reviewed it and finds that it was not inappropriate in any way.   Witnesses often are reluctant to answer questions on cross-examination and often give statements inconsistent with their pretrial statements, but attorneys for the opponent are adept at extracting answers and revealing inconsistencies anyway.   Holmes was competent in his questioning of Bratcher, in one instance forcing Bratcher to admit statements he swore to before trial were inaccurate.   The jury heard this and considered it when deciding whether Bratcher was credible as a witness.   There was simply nothing about Bratcher's testimony that Holmes could have objected to that, had he done so, would have created a reasonable probability that the trial would have ended differently.

For these reasons, the Court finds Holmes was not constitutionally ineffective with respect to his handling of Bratcher.

D.      Ground 6: Attorney-Client Confidentiality

Farmer argues Holmes was constitutionally ineffective because he discussed information pertaining to this case with others, including Farmer's family and others in the community.   She specifically points to "negative statements about [her] person" and "negative statements about information that [she] was giving to him."   Pl. § 2255 Mot. at 11 (Doc. 1).   She also faults him for failing to call two witnesses to testify about the bank robbery note and instead talking to Farmer's family members about this strategy.   The Government responds that Farmer's allegations are not supported by objective evidence and that, even if Holmes had done what Farmer has alleged, there is no reasonable chance it would have changed the outcome of this case.

The Government is correct in that Farmer has failed to explain how Holmes' decisions about discussing Farmer's case with others – whether it was a violation of the attorney-client

12

privilege or not – rendered her trial unfair or how, had Holmes behaved differently, there was a reasonable probability of a different result at trial.   In the absence of such an explanation, Farmer cannot show prejudice from Holmes' behavior, and she is not entitled to § 2255 relief because of it.

To the extent she references two witnesses with testimony about the bank robbery note that Holmes did not call as witnesses, she has not adequately supported her claim.   As noted above, when a § 2255 petitioner faults his attorney for failing to present evidence at trial, the petitioner bears the burden of demonstrating what evidence the attorney should have presented and that the presentation of such evidence would have had a reasonable probability of changing the result. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003).   Farmer has not described, much less presented evidence of, the potential witnesses, their testimony, and how it would have had a reasonable probability of changing the outcome of her trial.   Thus, she is not entitled to § 2255 relief on this basis either.

E.   Ground 7: Prosecutorial Misconduct

Farmer claims her counsel was constitutionally ineffective because he failed to object to several instances of prosecutorial misconduct, which the Court will address in turn.

1.   Closing Argument

First, Farmer believes Holmes should have objected to the Government's argument in closing that Wrice and Anderson were incapable of committing the armed bank robbery charged. In its closing, the Government actually asked the jury to use its common sense to consider whether, in light of all Wrice's and Anderson's missteps in executing the robbery – for example, they forgot to wear gloves and to disguise their teeth as planned, allowed a witness to escape from the inside of the bank during the robbery, and accidentally left the bank robbery note behind – they had the

13

ability to construct an intricate plan to frame Farmer for a crime she did not commit (part of her defense).   There is nothing wrong with this invitation to the jury to apply its common sense, and Holmes was not deficient for failing to object to it.   Nor would it have had a reasonable chance of changing the outcome of the proceedings if he had objected.

### 2.   Superseding Indictment

Farmer also believes Holmes should have objected when the Government sought a superseding indictment after she failed to plead guilty to the original indictment.   The superseding indictment added a charge of brandishing a firearm during a crime of violence to the original indictment's charge of armed bank robbery.   The new charge carried with it a mandatory seven-year consecutive sentence if Farmer was convicted.

Pursuing enhanced charges is vindictive and improper when it is motivated by retaliation for the defendant's exercise of a legal right or some other improper motive.   *United States v. Pittman*, 642 F.3d 583, 586 (7th Cir. 2011).   This occurs, for example, when the enhanced charges are motivated by the prosecutor's resentment for a defendant's successful appeal or the prosecutor's own personal interest.   *Id.*   Vindictive prosecution is extraordinarily difficult to prove because a defendant must "affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus."   *United States v. Falcon,* 347 F.3d 1000, 1004 (7th Cir. 2003).   Suspicious timing between the exercise of a right and enhanced charges alone is not enough to show misconduct.   *Pittman*, 642 F.3d at 587 (citing *United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006)).   It is the defendant's burden to convince the Court she would not have been prosecuted on enhanced charges without the Government's animus against her.   If she can do this, the Government must then show that its allegedly vindictive decision was actually properly motivated.   *Pittman*, 642 F.3d at 586.

14

Farmer has made nothing more than naked allegations that the superseding indictment was an exercise of prosecutorial vindictiveness because she chose not to plead guilty to the original indictment.   She points to the chronology of her decision not to plead guilty to the original indictment and the return of the superseding indictment, but she points to no objective evidence Holmes could have or should have raised before the Court to show an improper motive of the Government for the superseding indictment.   In the absence of such objective evidence, Farmer cannot show Holmes was deficient or that there is a reasonable probability that the proceedings would have come to a different result had he raised a prosecutorial misconduct charge to the Court.

Indeed, in the Court's experience, this is run-of-the-mill prosecutorial strategy.   *See United States v. Ford*, 568 Fed. App'x 477, 480 (7th Cir. 2014) ("But adding charges as a [plea bargaining] tactic is both common and permissible. . . .").   The Government often exercises its charging discretion not to charge in an original indictment all of the crimes it reasonably believes it can prove beyond a reasonable doubt and instead saves the power to seek enhanced charges as a bargaining tool in plea negotiations.   This is done in the Government's quest to arrive at a just punishment for defendants who are guilty without expending limited prosecutorial and judicial resources pursuing charges that are not followed to their conclusion.

### 3.   Witness Tampering

Farmer again criticizes Holmes for failing to object to Special Agent Bratcher's advising a witness not to talk to defense counsel.   As noted above, Farmer has no constitutional right to talk to witnesses before her trial so long as she has an adequate opportunity to question them at trial. She did so with respect to the witness in question, who actually ended up testifying in Farmer's case to the jury.   Farmer has not shown how Holmes could have objected to Bratcher's instructions to that witness in a way that would have had a reasonable probability of changing the

15

result of the trial.   Therefore, Holmes was not constitutionally ineffective in this regard.

       4.    <u>Fingerprint Analysis</u>

The Court is hard-pressed to understand Farmer's objection to Holmes' conduct on the basis of a report by a fingerprint analysis lab.   The report reflects that law enforcement sent a set of Farmer's fingerprints to a laboratory to be compared to latent fingerprints gathered from the bank robbery note in this case.   The report further omits Farmer's names of identified suspects in the robbery.   The report indicates the analysis "did not reveal an identification" of Farmer's prints as those on the bank robbery note.   The Court cannot see anything objectionable about the laboratory report to which Holmes could have objected, much less anything objectionable that, if corrected or brought to light, would have had a reasonable probability of changing the result of the trial.

       5.    <u>Bratcher as Expert</u>

Farmer faults Holmes for not objecting to Special Agent Bratcher's testifying as an expert witness regarding cell phone towers.   She notes that he has no training in telephone operations. Farmer fails to note, however, that Bratcher was not offered as an expert witness on this topic. The Government called John Hauger, who the Court recognized as an expert witness in geotracking through cell phone signal tracing, to testify on these matters.   Bratcher simply testified as to how he investigated the information obtained through the processes Hauger described and where that investigation led him, both topics within his competency as an FBI investigator.   Holmes was not deficient for failing to object to Bratcher's testimony for this reason.

For the foregoing reasons, the Court finds Holmes was not deficient for failing to make the objections Farmer believes he should have made and that Farmer suffered no prejudice from

Holmes' conduct in that regard.    She is not entitled to § 2255 relief on this basis.

      F.    <u>Ground 9:   Jury Instructions</u>

Farmer claims Holmes was deficient for failing to object to the jury instructions regarding the elements necessary to support a conviction for brandishing of a firearm.   There was no evidence that Farmer herself brandished any firearm; the Government's theory was that she aided and abetted Wrice and Anderson to brandish firearms during the bank robbery so she can be held accountable under 18 U.S.C. § 2.   Farmer believes Holmes should have objected to the instructions because they did not require the jury to find she knew in time to withdraw from the criminal scheme that her accomplices would be using guns.

A March 2014 Supreme Court case, *Rosemond v. United States*, 134 S. Ct. 1240 (2014), held essentially that a defendant cannot be accountable under § 924(c) for aiding and abetting an accomplice's use of a gun unless she fully knew in advance that a gun would be used.   *See id.* at 1248-49.   Active participation in a criminal scheme while knowing a gun would be used evidences the intent required for a conviction for aiding and abetting a § 924(c) offense.   *Id.* at 1249.   However, a defendant must have known far enough in advance that she had a realistic opportunity to change the plan to use the gun or to withdraw from active participation in the crime. Otherwise, her participation does not equal intent, for she could not intend to participate in a gun crime when she did not know it was going to be a gun crime.   *Id.* at 1249-50.

Farmer has not shown she suffered prejudice from Holmes' failure to object to the instructions.   The Court gave the following instructions, among others, in Farmer's case:

>      To sustain the charge of brandishing a firearm during or in relation to a violent crime, the government must prove the following propositions:
>      First, that the defendant committed the crime of aggravated bank robbery as charged in Count 1; and
>      Second, that the defendant knowingly displayed a firearm to another person

during and in relation to that crime in order to intimidate that person.

      If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

      If, on the other hand, you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

Seventh Circuit Pattern Jury Instruction at 236 (1999) (using/carrying instructions modified to reflect brandishing as defined in 18 U.S.C. § 924(c)(4)).

      Any person who knowingly aids, counsels, commands, induces, or procures the commission of an offense may be found guilty of that offense. That person must knowingly associate with the criminal activity, participate in the activity, and try to make it succeed.

Seventh Circuit Pattern Jury Instruction 5.06 (1999).

      A conspirator is a person who knowingly and intentionally agrees with one or more persons to accomplish an unlawful purpose.   A conspirator is responsible for offenses committed by her fellow conspirators if she was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of and as a foreseeable consequence of the conspiracy.

      Therefore, if you find beyond a reasonable doubt that the defendant was a member of a conspiracy at the time that her fellow conspirators committed the offense charged in Counts 1 and 2 in furtherance of and as a foreseeable consequence of that conspiracy, then you should find her guilty of Counts 1 and 2.

Seventh Circuit Pattern Jury Instruction 5.10 (1999).

      It is true that after *Rosemond* the Court's instructions set forth above may be deemed inadequate because they did not require the jury to find Farmer knew Wrice or Anderson would brandish a gun in enough time for her to have had a realistic opportunity to withdraw from the criminal scheme.   Had Farmer's case been on direct appeal, this might have been sufficient to reverse her conviction on the § 924(c) count.   However, this case is *not* on direct appeal.   On collateral attack where Farmer is claiming ineffective assistance of counsel, the Court must ask whether, regardless of the state of the law at the present time, counsel was deficient at the time of

his performance at the trial.   At the time of Farmer's trial, which predated *Rosemond* by almost two years, the jury instructions reflected the state of aiding and abetting law within the Seventh Circuit; it was not necessary at that time to prove advanced knowledge that a gun would be used in the felony underlying a § 924(c) conviction and a realistic opportunity for the defendant to withdraw from the crime.   Holmes was not deficient for failing to object to jury instructions based on a Supreme Court case that had not yet been decided where the jury instructions were consistent with the law at the time as to the requirement of advanced knowledge.

More importantly, Farmer has not explained how a different instruction would have had a reasonable probability of changing the result of the trial.   Wrice and Anderson testified that Farmer was an integral part of the planning and execution of the robbery.   Wrice testified she had agreed with Farmer more than a month before the bank robbery that guns would be used and that they had discussed immediately before the robbery how they should use the guns inside the bank. Wrice and Anderson also testified that Farmer had written the bank robbery note announcing that the robbers had guns prior to their arrival at the bank.   A handwriting expert testified that the note was written in handwriting with similarities to Farmer's handwriting, although the fingerprints on the note were never matched to Farmer's.   Farmer, on the other hand, testified that she was not involved in the robbery in any way and had loaned her vehicle and cell phone to Wrice without any knowledge that Wrice and Anderson were going to use them to commit a robbery.   The jury rejected Farmer's defense and convicted her of both counts.   Having chosen to believe Wrice and Anderson over Farmer as to the overall crime, it is extremely unlikely that the jury would have disbelieved their testimony specifically relating to whether and when Farmer knew that guns would be brandished in the robbery.   Thus, the jury would have found Farmer knew guns would be brandished in the robbery in plenty of time for her to easily withdraw from the armed robbery

19

before it even began.   There is no reasonable probability that, even if instructed consistent with *Rosemond*, the jury would have found Farmer not guilty.

To the extent Farmer makes a direct challenge to her conviction based on *Rosemond*, assuming it is retroactively applicable on collateral review – and the Court makes no such finding – she has still failed to demonstrate her entitlement to relief.   For the same reasons the Court found Farmer suffered no prejudice under the *Strickland* test from the instructions given, the Court also finds any error based on *Rosemond* did not render her trial fundamentally defective or result in a complete miscarriage of justice.

For these reasons, Farmer is not entitled to § 2255 relief on this basis.

G.   Ground 11: Failure to Convey a Plea Offer

Farmer believes Holmes was constitutionally ineffective because he failed to notify her of a plea offer from the Government in violation of *Missouri v. Frye*, 132 S. Ct. 1399 (2012).   *Frye* held that defense counsel has a duty "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."   *Id.* at 1408; *accord Estremera v. United States,* 724 F.3d 773, 778 (7th Cir. 2013) (stating "lawyers must tell their clients about offers of plea bargains").   The Government argues that Farmer has not presented any detailed affidavit about an uncommunicated formal plea offer and that she cannot show prejudice because she has not pointed to objective evidence showing she would have taken a plea deal if offered.   The Government supports its position with a copy of an e-mail to Holmes in which the Government asks what Farmer is going to do – that is, whether she would like to plead guilty or go to trial – and warns that it would seek a superseding indictment adding the § 924(c) charge if she decided not to plead guilty.

As a preliminary matter, Farmer provides no support for her assertion that the Government

even made a formal plea offer that Holmes should have conveyed to her under *Frye*.   Her

unsupported speculation that such a plea offer exists does not satisfy her obligation to provide "a

detailed and specific affidavit which shows that the petitioner has actual proof of the allegations

going beyond mere unsupported assertions."   *Barry v. United States,* 528 F.2d 1094, 1101 (7th

Cir. 1976) (footnote omitted); *accord Galbraith v. United States*, 313 F.3d 1001, 1010-11 (7th Cir.

2002); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996).   If no formal plea offer was

made, counsel had nothing to pass on to his client, and his conduct could not be deemed deficient.

Additionally, Farmer has not pointed to any prejudice she suffered as a result of Holmes'

failure to pass along a plea offer, even if a formal offer had been made.   Where a petitioner faults

her counsel for failing to convey a plea offer from the Government, to show prejudice under the

*Strickland* test, she must "demonstrate a reasonable probability[she] would have accepted the

earlier plea offer had [she] been afforded effective assistance of counsel."   *Id.* at 1409.   As with

petitioners who accuse their counsel of ineffectiveness leading to the decision to *accept* a plea

offer, the petitioner must point to objective evidence to support her contention.   Self-serving

statements after an adverse verdict that the defendant would have taken a plea deal had she known

about it are not enough.   Here, it is true that Farmer would have faced a lower sentence had she

pled guilty to armed bank robbery before the § 924(c) charge was added in the superseding

indictment.   However, the objective evidence shows Farmer was not willing to admit to the armed

bank robbery and wanted to go to trial unless the charges could be reduced, but, again, there is no

indication the Government ever offered such a deal or that Farmer would have accepted it had it

been offered.   Furthermore, Farmer's sworn testimony at trial indicated her adamant stand that

she did not participate in the planning or execution of the bank robbery.   It would be tough for her

to say now that she would have admitted under oath to participating in the robbery – in direct

contradiction of her sworn testimony at trial – had a plea offer been on the table.   Because there is

no reasonable probability Farmer would have pled guilty to the bank robbery had she known about

a plea offer, Farmer has not demonstrated she was prejudiced from any failure of Holmes to

convey a plea offer.

For these reasons, Farmer is not entitled to § 2255 relief on this basis.

H.    Ground 12: Failure to Raise Fingerprint Issue on Appeal

Finally, Farmer believes Holmes should have raised on appeal an argument relating to

Special Agent Bratcher's testimony that the prints on the bank robbery note could have been from

Farmer's wrist.   The Government argues that Holmes was not deficient for failing to raise the

issue because Bratcher's testimony was not objectionable and because Holmes had stronger issues

to raise on appeal.

Appellate counsel is not deficient for failing to "raise every non-frivolous issue under the

sun." *Mason v. Hanks,* 97 F.3d 887, 893 (7th Cir. 1996).   Counsel is only deficient if he "fails to

appeal an issue that is both obvious and clearly stronger than one that was raised." *Winters v.*

*Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001); *accord Suggs v. United States*, 513 F.3d 675, 678 (7th

Cir. 2008).   Furthermore, a petitioner can show prejudice from this deficiency only by

demonstrating "that there is a reasonable probability that, but for the deficient performance of his

attorney, the result of the appeal would have been different."   *Suggs*, 513 F.3d at 678.

At trial, Bratcher testified a number of times about whether Farmer's fingerprints were

found on the bank robbery note:

> [MR. HOLMES]:      Okay. As case agent, do you have any knowledge, has
>             fingerprints been obtained and positively identified for Franchie Farmer on
>             that note?
> A.             No, sir.

22

Tr. at 384.

> [GOVERNMENT]:          So the -- I guess and, and once, once you learned that
> -- and you also knew that Franchie Farmer's fingerprints weren't on that
> note, is that -- or that's probably -- what did you --
>
> A.          That's not correct.
>
> Q.          What did you discover regarding the fingerprints -- well, just tell us
> what the finger -- you were asked about the fingerprint evidence yesterday.
> Tell us what the fingerprint evidence revealed.
>
> A.          There was additional prints on that note. They -- we took what we
> call full case prints of Franchie Farmer.   The analysis -- the forensic
> scientist could not match the full case prints for Franchie Farmer.
>          However, he indicated that the prints on the note were most likely
> made from the wrist of somebody, so he just could not match them up. I
> can't say her prints weren't on it, but I couldn't say they are on it either.

Tr. at 413.

> [MR. HOLMES]:      Okay. So each time you asked for the stuff that you needed,
> the -- print-wise, she came and gave it to you and the results are still
> inconclusive; correct?
>
> A.          Inconclusive, yes.
>
> * * *
>
> Q.          Okay. And [Wrice's and Anderson's] prints are on the note; correct?
>
> A.          Yes, sir.
>
> Q.          Hers isn't.
>
> A.          Yes, sir.
>
> Q.          That's --
>
> A.          That's not true. That's not true.
>
> * * *
>
> A.          There's other prints on the note that cannot be identified. They may
> be hers, they may not be hers.

Tr. at 424-25.   Holmes argued to the jury that if Farmer had written the note as Wrice and

Anderson described, her fingerprints would have been on it, and the lack of Farmer's fingerprints

on the note indicated she could not have written it.

Holmes was not deficient for failing to raise Bratcher's testimony regarding fingerprints on

appeal.   First, it is unclear why Farmer believes Bratcher's testimony was objectionable.   He

consistently testified that the fingerprints on the bank robbery note were not conclusively matched

to Farmer's fingerprints but that there were other prints that may or may not have been hers. Nothing in this testimony suggests grounds for reversal on appeal.   To the extent this argument might have been a component of an insufficiency of the evidence argument, it was a weak argument considering all the evidence presented at trial and the other, more meritorious arguments Holmes did raise on appeal.

Additionally, Farmer has not explained how raising this issue on appeal would have had are reasonable probability of changing the result of the appeal.   The fingerprint evidence was inconclusive, and Holmes made the best of that matter at the trial court level.   There was simply nothing about the fingerprint evidence that had a reasonable probability of resulting in a reversal of Farmer's conviction.

For the foregoing reasons, the Court rejects Grounds 1, 2, 5, 6, 7, 9, 11 and 12 as based for § 2255 relief.

## III.   Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).   To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further."   *Ouska*, 246 F.3d at 1046; *accord Tennard*, 542 U.S. at 282; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability should issue if the

24

petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").

The Court finds that Farmer has not made such a showing as to Grounds 1-8 and 10-12 and, accordingly, declines to issue a certificate of appealability on those grounds.   However, with respect to Ground 9, the Court finds that reasonable jurists could debate whether the Court's resolution of the issue was correct.   Accordingly, the Court **GRANTS** a certificate of appealability as to the following issue:

- whether, in light of *Rosemond v. United States*, 134 S. Ct. 1240 (2014), the jury instructions regarding the elements necessary to prove brandishing a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii) deprived Farmer of a fair trial and whether counsel was constitutionally ineffective for failing to object to the jury instructions on this basis;

and **CERTIFIES** this issue as **APPEALABLE**.   The Court denies a certificate of appealability as to all other issues.

## IV.   Conclusion

For the foregoing reasons, the Court **DENIES** Farmer's § 2255 motion and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   February 11, 2015**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
