In the

# United States Court of Appeals

For the Seventh Circuit

_____

No. 15-1483

FRANCHIE FARMER,

            *Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

            *Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 14-cv-694-JPG — **J. Phil Gilbert**, *Judge*.

_____

ARGUED SEPTEMBER 19, 2016 — DECIDED AUGUST 15, 2017

_____

Before POSNER, WILLIAMS, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. In 2012 a jury convicted Franchie Farmer of armed bank robbery, *see* 18 U.S.C. § 2113(a) and (d), and brandishing a firearm during a crime of violence, *see id.* § 924(c)(1)(A)(ii). Farmer drove the getaway car and was not in the bank during the robbery. Her convictions were thus premised on an accomplice theory of liability as an aider or abettor under 18 U.S.C. § 2.

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In 2014 the Supreme Court held that a § 924(c) conviction under an accomplice theory requires proof that the accomplice had "foreknowledge that his confederate [would] commit the offense with a firearm." *Rosemond v. United States*, 134 S. Ct. 1240, 1249 (2014) (quotation marks omitted). The jury at Farmer's trial was not instructed on a foreknowledge requirement for the § 924(c) charge. Understandably so; her trial predated *Rosemond* by two years. Nor did her counsel challenge the § 924(c) instruction, either at trial or in her direct appeal. *See United States v. Farmer*, 717 F.3d 559 (7th Cir. 2013) (affirming the district court on all counts).

Farmer *did* challenge the instruction, albeit obliquely, in a motion under 28 U.S.C. § 2255 after *Rosemond* was decided. She argued that her trial counsel was constitutionally ineffective for failing to object to the § 924(c) instruction. The district judge denied relief because Farmer failed to establish that she was prejudiced by her counsel's failure to object.

Farmer's argument has shifted somewhat on appeal. She now raises the *Rosemond* issue directly rather than through the prism of trial counsel's ineffectiveness. Farmer procedurally defaulted this claim and must establish cause and actual prejudice to excuse the default. She hasn't done so. The government presented plenty of evidence that Farmer had advance knowledge that a gun would be used in the robbery, so the *Rosemond* error was not grave enough to cause actual prejudice. We affirm.

## I. Background

In 2008 two people robbed a bank at gunpoint in the small town of Tamms in southern Illinois, taking more than $14,000. During the robbery, a bank customer managed to

escape the premises and hide a short distance away. The customer saw the two robbers leave the bank and flee in the back of a dark SUV. The witness told police that the two front seats of the SUV were already occupied when the robbers jumped in, but he didn't get a good look at either person. In their haste to leave the bank after the robbery, one of the robbers dropped the demand note. It read: "This is a robbery, I have a gun, don't cause a scene and no one will get hurt, I do have a gun!!!"

It did not take long for police to catch the two bank robbers. After seeing surveillance footage on the local news, an ex-girlfriend identified Richard Anderson as one of the robbers; his fingerprints on the demand note confirmed his involvement. A couple of weeks later, a lead from a pawnshop robbery across the river in Missouri pointed to Holli Wrice as the other robber. Police also identified the getaway car as a black 2002 Toyota Sequoia. An officer spotted the car in Tamms and learned that it was registered to Franchie Farmer, who admitted that she had loaned the Sequoia and her cell phone to Wrice on the day of the robbery but claimed that she didn't know anything about Wrice's activities that day.

Farmer told the police that at the time of the robbery, she had been working at her job as an in-home caretaker for a mentally disabled woman. As police looked into Farmer's story, however, additional questions arose. Cell-phone records indicated that a number of calls were placed between Farmer's cell phone and Wrice's cell phone just before, during, and after the bank robbery. During the same period, a number of calls were placed from Farmer's cell

phone to her family members—people whom Wrice had no reason to call.

Farmer's account was also directly contradicted by Wrice and Anderson, who agreed to cooperate with the government in its case against Farmer after being charged and negotiating plea deals. A grand jury indicted Farmer on one count of armed bank robbery in violation of § 2113(a) and (d) and one count of brandishing a firearm during a crime of violence in violation of § 924(c)(1)(A)(ii). The charges were premised on an accomplice theory of liability. *See* 18 U.S.C. § 2.

Wrice and Anderson testified at trial that Farmer was the getaway driver for the robbery and that she brought along the mentally disabled woman who was in her charge—presumably the front-seat passenger espied by the bank customer. According to their testimony, Farmer met them behind a mall on the day of the robbery and they drove in separate cars to a rural plot of land Farmer owned outside of Tamms. When they arrived, Farmer wrote the demand note. Anderson and Wrice then got into the Sequoia, and they drove together to the bank. After the robbery Farmer drove everyone back to the rural property where they split up and went their separate ways.

Wrice testified that Farmer had been involved in planning the robbery for several months and that the two had discussed using guns on many occasions. Anderson was unsure whether Farmer knew that he and Wrice were going to brandish guns in the bank, but Wrice testified that Anderson was a late addition to the team and hadn't been present at the earlier planning sessions. And of course, as we've noted, both Wrice and Anderson testified that Farmer

wrote the demand note, which twice mentioned the presence of a gun. Wrice described the discussion that she and Farmer had while Farmer prepared the note:

> Should we just display a gun, or should we show them the gun, or let's not display the gun, or let's put on here that you do have a gun, cooperate, you know, nobody gets hurt. And so we just wanted to—we discussed it, just leaving it kind of simple but to the point, but let them know we do have a gun.

A government expert also testified that the handwriting on the note matched Farmer's.

The jury convicted Farmer on both counts, and the district judge imposed a sentence of 141 months in prison. On direct appeal Farmer raised two issues: (1) a claim of juror impropriety and (2) a challenge to the sufficiency of the evidence. We affirmed the convictions. *Farmer*, 717 F.3d at 566.

In 2014 the Supreme Court decided *Rosemond v. United States*, 134 S. Ct. 1240, which clarified the government's burden to convict a defendant under § 924(c) as an aider and abettor. *Rosemond* held that accomplice liability requires proof that the defendant had "advance knowledge" that his coconspirators intended to use a gun during the crime. *Id.* at 1249. To show advance knowledge, the government must prove that the defendant learned about the planned gun use with enough time to "attempt to alter th[e] plan or, if unsuccessful, withdraw from the enterprise." *Id.* "[I]ntent to aid an *armed* offense" arises only after the defendant decides to

continue his participation in a venture that he learns will involve guns. *Id.*

Shortly after *Rosemond* was decided, Farmer moved for collateral relief under § 2255. She claimed, as relevant to this appeal, that her trial counsel was constitutionally ineffective for failing to object to the district court's § 924(c) jury instruction, which did not require the jury to find that she had advance knowledge that her coconspirators would be using a gun.

The judge denied the motion. Pointing to several pieces of evidence establishing that Farmer knew in advance that a gun would be used—Wrice's testimony, the demand note, the handwriting expert's testimony—the judge concluded that counsel's failure to object to the § 924(c) instruction was not prejudicial. In light of this evidence, the judge held, there was not a reasonable probability that a properly instructed jury would have acquitted Farmer on the gun charge.

## II. Discussion

We review the denial of a § 2255 motion under a split standard of review: legal questions are reviewed de novo; factual findings are reviewed for clear error. *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017).

Our first question is whether the rule established by *Rosemond* applies retroactively on collateral review. We've already held that it does. *Montana v. Cross*, 829 F.3d 775, 783–84 (7th Cir. 2016). To recap our reasoning: A decision of the Supreme Court announcing a new rule of criminal law applies to "convictions that are already final … only in limited circumstances." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). Generally speaking, new substantive rules apply

retroactively, but new procedural rules do not. *Id.* at 351–52. "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Id.* at 353; *see also Crayton v. United States*, 799 F.3d 623, 625 (7th Cir. 2015) (decisions are retroactive if they hold "that the law does not (or cannot constitutionally) make particular conduct criminal").

*Rosemond* held that to convict a defendant of a § 924(c) violation as an accomplice, the government must prove that he had advance knowledge of his collaborator's plan to use or carry a gun during the commission of the crime. 134 S. Ct. at 1249. "Advance knowledge" means that the defendant learned about the gun and its planned use sufficiently in advance of the crime to "attempt to alter th[e] plan or, if unsuccessful, withdraw from the enterprise." *Id.* By deciding instead "to go ahead with his role in the venture," the defendant "shows his intent to aid an *armed* offense." *Id.*

Before *Rosemond*, a defendant in this circuit could be convicted of violating § 924(c) on an accomplice theory if the government proved that he knew "either before *or during the crime*[] that the principal [would] possess or use a firearm." *United States v. Daniels*, 370 F.3d 689, 691 (7th Cir. 2004) (emphasis added); *see also United States v. Taylor*, 226 F.3d 593, 596 (7th Cir. 2000) (holding that aiding and abetting under § 924(c) requires proof that "(1) the defendant knew, either before or during the crime, of the principal's weapon possession or use; and (2) the defendant intentionally facilitated that weapon possession or use once so informed").

In other words, pre-*Rosemond* the government did not have to prove that the defendant learned about the gun with enough time to try to change his confederate's plan or to

remove himself from the venture altogether. Rather, accomplice liability was possible even if the defendant learned of a coconspirator's use of the gun while the crime was underway—as long as the defendant continued to participate after learning about the gun. *See Taylor*, 226 F.3d at 597. *Rosemond* limits liability under the latter circumstances:

> [W]hen an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun.

134 S. Ct. at 1249.

By requiring proof of the defendant's advance knowledge, *Rosemond* "alter[ed] the range of conduct … that the law punishes." *Schriro*, 542 U.S. at 353. *Rosemond* thus established a new substantive rule that is retroactive to cases on collateral review. *See Montana*, 829 F.3d at 783–84 (explaining that *Rosemond* addressed the requirements for criminal liability under § 924(c) and thus established a substantive rule).

In a shift from her approach in the district court, Farmer now raises the *Rosemond* issue directly—as a challenge to the erroneous § 924(c) jury instruction—rather than indirectly as the premise for a claim of trial counsel's ineffectiveness.[1]

---

[1] Farmer now frames the question presented as "[w]hether Ms. Farmer's sentence under 18 U.S.C. 924(c) should be vacated where … the aiding and abetting jury instruction was an error that did not require the jury to

Framed this way, the issue is new on appeal and Farmer must overcome procedural default. To excuse a procedural default, she must establish both cause for her failure to raise the issue earlier and actual prejudice resulting from the erroneous jury instruction.[2] *United States v. Frady*, 456 U.S. 152, 168 (1982); *see also Mankarious v. United States*, 282 F.3d 940, 943–44 (7th Cir. 2002).

To establish actual prejudice, Farmer must "shoulder the burden of showing[] not merely that the errors at [her] trial created a *possibility* of prejudice, but that they worked to [her] *actual* and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170. She has not carried this burden. The government introduced multiple pieces of evidence establishing that Farmer knew well in advance that her coconspirators would be armed during the robbery. Wrice testified that before the robbery she and Farmer discussed this plan multiple times. Wrice and Anderson both testified that Farmer wrote the demand note, which twice referred to a gun. Finally, a government expert testified that the handwriting on the demand note matched Farmer's own.

---

find that Ms. Farmer had actual advance knowledge that her alleged confederates would use a firearm."

[2] Farmer argues that the government forfeited procedural default by not raising it in the district court. The government had no reason to raise procedural default as a defense to Farmer's current claim—her direct challenge to the jury instruction—because Farmer didn't raise that claim in district court.

In short, the trial record contains ample evidence of Farmer's foreknowledge that guns would be used in the robbery. Accordingly, the instructional error did not work to her actual and substantial disadvantage. Put slightly differently, we are not "in grave doubt as to the harmlessness of the error." *Mankarious*, 282 F.3d at 944. The procedural default is not excused.

AFFIRMED.